David M. Berger (SBN 277526)
Tayler L. Walters (SBN 335121)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com
tlw@classlawgroup.com

Jeffrey D. Kaliel (SBN 238293)
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
jkaliel@kalielpllc.com

Sophia G. Gold (SBN 307971)
**KALIELGOLD PLLC**
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783
sgold@kalielgold.com
*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA CHRISTENSEN, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>Zions BANCORPORATION d/b/a CALIFORNIA BANK & TRUST,<br><br>        Defendant. | Case No. 3:22-cv-00007<br>Assigned To: Judge Gonzalo P. Curiel<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

FIRST AMENDED CLASS ACTION COMPLAINT

1

## CLASS ACTION COMPLAINT

2    Plaintiff Elisa Christensen, on behalf of herself and all persons similarly situated, brings

3    this class action complaint against Zions Bancorporation d/b/a California Bank & Trust

4    ("Zions," the "Bank," or "Defendant") and alleges the following:

5

### INTRODUCTION

6    1.    This case challenges Zions's routine practices of assessing more than one

7    insufficient funds fee ("NSF Fee") or overdraft fee ("OD Fee") on the same transaction.

8    Zions's customers have been injured by the Bank's improper practices to the tune of millions

9    of dollars bilked from their accounts in violation of Zions's clear contractual commitments.

10    2.    Plaintiff, on behalf of herself and two classes of similarly situated consumers,

11    seeks to end Zions's abusive and predatory practices, and force it to refund all of these

12    improper charges. Plaintiff asserts claims for breach of contract, including breach of the

13    covenant of good faith and fair dealing, and violation of unfair competition laws. Plaintiff

14    seeks damages, restitution, and injunctive relief, as set forth more fully below.

15    3.    When assessed in compliance with contractual terms, NSF and OD fees are

16    technically legal, but they have a crushing impact on persons living paycheck to paycheck.

17    This is why the financial services industry is increasingly moving away from such fees.

18    4.    For example, Ally Bank, one of the nation's largest consumer banks, recently

19    stopped assessing overdraft fees altogether. Diane Morais, Ally Bank's president of consumer

20    and commercial banking, said that one reason is because these fees disproportionately affect

21    people who are living paycheck to paycheck. *Overdraft Fees Are Getting the Boot at Ally*

22    *Financial*, The Wall Street Journal (June 2, 2021), https://www.wsj.com/articles/overdraft-

23    fees-are-getting-the-boot-at-ally-financial-11622631600 (last accessed September 29, 2021).

24    5.    A recent Washington Post article discussed predatory overdraft fees, labeling

25    NSF fees like those California Bank & Trust imposes as "indefensible" because "the customer

26    gets hit with multiple charges for the same item. *I bought my kids dinner – and saw firsthand*

27    *how overdraft fees punish the poor,* The Washington Post (October 1, 2021),

28

1

https://www.washingtonpost.com/outlook/i-bought-my-kids-dinner--and-saw-firsthand-how-overdraft-fees-punish-the-poor/2021/09/30/32383c40-216e-11ec-b3d6-8cdebe60d3e2_story.html. The banks "are charging a fee for doing literally nothing.... [T]his is like asking a friend if I can borrow $20, only to have him take $10 out of my wallet for turning down my request." *Id.*

## PARTIES

6.     Plaintiff is a citizen and resident of Pine Mountain Club, Kern County, California.

7.     Defendant Zions Bancorporation is engaged in the business of providing retail banking services to consumers and businesses, including to Plaintiff and members of the putative Classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. Zions operates banking centers, and thus conducts business, throughout the State of California and in this District.   Zions is a national banking association with its main office in Salt Lake City, Utah.

## JURISDICTION AND VENUE

8.     This court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and (6). This is a class action in which the proposed classes are comprised of at least 100 members, the amount in controversy exceeds the sum of $5,000,000, and Zions Bancorporation is a citizen of a State different from that of at least one Class member.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) through (d) because a Defendant is subject to personal jurisdiction here and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

I. **Zions Improperly Charges Multiple Fees on The Same Transaction.**

10.     Zions's August 2020 Deposit Account Agreement ("Deposit Agreement"), attached as Exhibit A hereto, and 2020 Personal Service Charge Information ("Fee Schedule"),

FIRST AMENDED CLASS ACTION COMPLAINT

attached as Exhibit B hereto (collectively, "Account Documents"), allow Zions to charge a *single* $36 NSF Fee or a *single* $36 OD Fee when a transaction is returned for insufficient funds or paid despite insufficient funds.

11.     Zions breaches its Account Documents by charging more than one $36 NSF Fee and/or OD Fee on the same transaction since the contract explicitly states—and reasonable consumers understand—that the same transaction can only incur a single NSF or OD Fee.

12.     Zions's abusive practices are not standard within the financial services industry. Indeed, major banks like Wells Fargo, do *not* charge more than one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as Zions, their members agree to terms authorizing the fee practice.

13.     Until recently when Zions updated its disclosures, Zions's Account Documents did not say that Zions may repeatedly charge customers multiple fees on a single transaction. To the contrary, the Account Documents indicate Zions will only charge a single NSF Fee or OD Fee on a transaction.

### A.     Plaintiff's Experiences.

14.     Plaintiff is a checking accountholder with Zions's bank, California Bank & Trust. In support of her claim, Plaintiff offers examples of fees that should not have been assessed against her checking account. As alleged below, Zions: (a) reprocessed previously declined transactions; and (b) charged an additional fee upon reprocessing.

15.     For example, in May 2019, September 2019, December 2019, February 2020, May 2020, and June 2020, amongst other instances, Plaintiff was charged NSF Fees and OD Fees on transactions which were resubmitted by the merchant for payment without Plaintiff's request to reprocess the transactions. Each merchant request for payment was for a single transaction and, as is laid out in Zions's August 2020 Account Documents, should be subject to, at most, a single NSF Fee (if Zions returned it) or a single OD Fee (if Zions paid it).

FIRST AMENDED CLASS ACTION COMPLAINT

**B.    The Imposition of Multiple Fees on a Single Transaction Violates Zions's Express Promises and Representations.**

16.    Zions's 2020 August Account Documents state that the Bank will assess a single fee of $36 for a transaction that is returned due to insufficient funds.

17.    According to the November 2020 Fee Schedule, at most a *single* fee will be assessed "per check" or "per ACH" when a "transaction" is returned or paid into overdraft:

**INSUFFICIENT FUNDS –** Fee is charged:

- Per check, ACH, or wire transaction posted against insufficient funds, whether the bank pays or returns the transaction.
- Per ATM or one-time debit transaction paid against insufficient funds if you have opted-in to our Debit Card Overdraft Service.
- Per multiple-use debit card transaction paid against insufficient funds.
- Per non-debit card withdrawal transaction paid against insufficient funds.

Fee Schedule, Ex. B, p. 1.

18.    The same check, ACH, or other electronic payment on an account is not a new "transaction" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the transaction.

19.    Even if Zions reprocesses an instruction for payment, it is still the same transaction. The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

20.    As alleged herein, Plaintiff took only a single action to make a single payment; she therefore created only one transaction and may be charged only a single fee.

21.    As the disclosures described above show, Plaintiff never agreed that Zions may assess multiple NSF Fees or OD Fees for a transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

21.    In sum, Zions promises that one $36 NSF Fee or one $36 OD Fee will be assessed per item, and this must mean all iterations of the same instruction for payment. As such, Zions breached the contract when it charged more than one fee per transaction.

FIRST AMENDED CLASS ACTION COMPLAINT

22.     A reasonable consumer would understand that Zions's Account Documents permit it to assess an NSF Fee or OD Fee only once per "transaction."

23.     Taken together, the misrepresentations identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "transaction," which the Bank will either pay (resulting in an overdraft item) or return (resulting in a returned transaction) when it decides there are insufficient funds in the account. Nowhere do Zions and its customers agree that Zions will treat each reprocessing of a check or ACH payment as a separate transaction, subject to additional fees.

24.     Customers reasonably understand, based on the language of the Account Documents, that the Bank's attempts to reprocess checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees or OD Fees. In other words, it is always the same transaction. Banks like Zions that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that engage in this abusive practice require their accountholders to expressly authorize it—something Zions never did until recently.

25.     Recently, Zions updated its Deposit Agreement to disclose its multiple fee assessment practice for the first time, stating:

> Re-Presentment of Items – Insufficient Funds Fee. Any items that have been previously returned and are re-presented to us for payment will be recognized as a new item. These items may be assessed an Insufficient Funds Fee (NSF) each time they are presented and returned for insufficient funds when your available balance cannot cover the transaction.

26.     Prior to making this change, Zions's Deposit Agreement had no such clarification and instead its account documents promised consumers the opposite.

27.     Zions's new disclosure brings it in line with other financial institutions who clearly disclose the practice.

FIRST AMENDED CLASS ACTION COMPLAINT

28.    For example, First Hawaiian Bank engages in the same abusive practices as Zions, and discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://bit.ly/2KWMvTg (last accessed Jan. 28, 2021) (emphasis added).

29.    Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer Account Terms and Conditions*, Klein Bank 4 (Jan. 2013), https://bit.ly/2KVCkhI (emphasis added).

30.    Central Pacific Bank, a leading bank in Hawai'i, states in its deposit account under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient funds ("NSF") in your account, may be resubmitted one or more times for payment, and a returned item/transaction fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/non-sufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Jan. 4. 2021), https://www.cpb.bank/media/2776/fee-001.pdf (last accessed June 4, 2021).

31.     BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item." *Membership and Account Agreement,*         BP         Federal         Credit         Union,        ¶        14(a), https://www.bpfcu.org/images/docs/membership-agreement.pdf (last accessed June 4, 2021).

32.     Regions Bank likewise states:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (2018), https://bit.ly/2L0vx6A (last accessed June 4, 2021).

33.     Andrews Federal Credit Union states:

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Terms & Conditions*, Andrews Federal Credit Union 17 (Aug. 2020), ¶ 6, https://bit.ly/3iXEdHb (last accessed June 4, 2021).

34.     Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or

FIRST AMENDED CLASS ACTION COMPLAINT

resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Member Services Guide*, Consumers Credit Union 5 (Apr. 2020), ¶ 11a, https://bit.ly/3iVM1ta (last accessed June 4, 2021).

35.    Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information*, Wright Patt Credit Union 13 (July 2020), ¶ 6.1, (last accessed June 4, 2021).

36.    Railroad & Industrial Federal Credit Union states:

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union, p. 2, (Aug. 1, 2019), https://bit.ly/3t5ehhF (last accessed June 4, 2021).

37.    Partners 1st Federal Credit Union states:

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union, p. 11 (Sept. 15, 2019), https://bit.ly/39pDZWb (last accessed March 2, 2021).

8

38.    Members First Credit Union states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment[.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3, https://bit.ly/39rRJ2Y (last accessed March 2, 2021).

39.    Community Bank, N.A. states:

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank 5 (Nov. 12, 2019), https://bit.ly/3iY9dH2 (last accessed June 4, 2021).

40.    RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

*Service Agreement for Personal Accounts*, RBC Bank 13 (Sept. 17, 2014), https://bit.ly/3otUtko (last accessed June 4, 2021).

41.    Diamond Lakes Credit Union states,

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

*Membership and Account Agreement*, Diamond Lakes Federal Credit Union, https://bit.ly/39o2P94 (last accessed June 4, 2021).

42.    Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same

FIRST AMENDED CLASS ACTION COMPLAINT

check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

*Membership and Account Agreement*, Parkside Credit Union 21 (Jan. 30, 2020), https://bit.ly/3aaXfpG (last accessed March 2, 2021).

43.    Zions provides no such disclosure, and by not doing so, deceives its accountholders.

**C.    The Imposition of Multiple Fees on a Single Transaction Breaches Zions's Duty of Good Faith and Fair Dealing.**

44.    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. This is the law of California and nearly all states. Further, as to bank transactions, the Uniform Commercial Code ("UCC")—which has been adopted by all states—mandates good faith and fair dealing. As such, when a party such as Zions gives itself discretion to act, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements Zions foisted on Plaintiff and its other customers—Zions has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

45.    Zions exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "transaction" in a way that directly leads to more

NSF or OD Fees. Further, Zions abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

46.     By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one fee on a single transaction, Zions breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

47.     It was bad faith and totally outside Plaintiff's reasonable expectations for Zions to use its discretion to assess multiple NSF Fees and/or OD Fees for a single attempted payment.

## II. <u>Zions Fraudulently Conceals Its Practices from Accountholders</u>

48.     Not only did Zions misrepresent the truth about its fee practices in its account contract, Zions also fraudulently concealed its fee practices from its customers, such as Plaintiff.

49.     Specifically, Zions issued monthly statements to its accountholders that disguised and made it difficult to discover its multiple fee practice.

50.     Pursuant to federal law, Regulation E of the Electronic Funds Transfer Act, those monthly statements are the primary disclosure a bank provides its accountholders regarding the assessment of overdraft or NSF Fees on an account.

51.     However, the design of Zions's bank statements made it difficult for Plaintiff to discover the truth about Zions's practices.

52.     For example, Zions bank statements are formatted to separately list debits, credits, and bank fees, which makes difficult for a reasonable consumer to correlate transactions with any corresponding bank fees. *See* Ex. C. As a result, Zions makes it difficult to determine from the statements that it even assesses multiple fees on the same item when it is resubmitted for payment multiple times.

53.    As shown in the redacted bank statement provided to Plaintiff, at Exhibit C, it is not clear, nor will it become clear through a reasonable investigation, that Zions assessed multiple fees on the same "So Calif Edison" transaction when it was resubmitted for payment multiple times. Indeed, it is not clear the "So Calif Edison" transaction incurred any NSF Fee—let alone multiple.

54.    On May 17, 2019, Zions listed in the "Charges/Debits" section of the bank statement a $66.74 "So Calif Edison Payment" as posting that day. That was false. $66.74 was not "debited" from the account that day, and in fact no funds were ever "debited" for the first presentation of that item. The bank statement shows Zions did not assess any fee for that item on May 17, the day the statement shows the payment as posting. On May 20, 2019, Zions listed in the "Deposits/Credits" section of the bank statement a credit of $66.74 posting to the account that day.  That was false. In fact, funds in the amount of $66.74 were not deposited into the account that day or on any other day.  Zions did not return and assess an NSF Fee for the May 17, 2019, ACH until May 20, 2019—three days later.  The line entry for that May 20, 2020, NSF Fee was separated from the transaction that caused the fee by an unrelated transaction—it was not adjacent—and the line entry for the NSF Fee does not reference or link to the May 17 ACH in any way. Instead, it contains a series of numbers which does not match to any other number listed don the statement.

55.    On May 23, 2019, Zions listed in the "Charges/Debits" section of the bank statement the second presentation of the same $66.74 "So Calif Edison" "retry payment" as posting that day. That was false. $66.74 was not "debited" from the account that day, and in fact no funds were ever "debited" for the second presentation of that item. The Zions statement shows the Bank did not assess any fee for the second presentation of the item on May 23, 2019, the day the statement shows it as posting. On May 24, 2019, Zions listed in the "Deposits/Credits" section of the bank statement a credit of $66.74 posting to the account that day.  That was false. In fact, funds in the amount of $66.74 were not deposited into the account that day or on any other day.  Zions did not return and assess an NSF Fee for the May 23

FIRST AMENDED CLASS ACTION COMPLAINT

represented ACH until May 24— one day later than the bank statement falsely shows the item being debited from the account.  The line entry for that May 24, 2019 NSF Fee was separated from the transaction that caused that fee by three unrelated transactions—it was not adjacent— and it did not reference or link to the May 23, 2019 ACH in any way. Instead, it contains a series of numbers which does not match to any other number listed don the statement.

56.    As demonstrated above, Zions designs its statements in this manner to make it difficult for reasonable consumers like Plaintiff to discover Zions true multiple NSF and OD fee practice.

57.    Indeed, Zions's practice is unusual. Banks and credit unions across the country routinely issue bank statements that display the challenged "retry fee" practice in a logical, unified, understandable display.  Unlike Zions's statements, the debit and the deposit of a returned transaction are routinely adjacent (not broken into different sections), so that an accountholder can clearly see no debit actually occurred; the transaction that causes a fee is directly adjacent to the NSF Fee itself (not separated by potentially several unrelated transactions, as Zions does); and the NSF Fee description explains precisely what "RETRY" transaction caused the fee (Zions provided no description whatsoever). But Zions's statements are disjointed and contain none of this information.

58.    Plaintiff did not and could not discover Zions's improper fee assessment practices, as described herein, on the bank statements issued by Zions.

59.    Indeed, despite diligently checking her statements each month and monitoring her bank account, Plaintiff was unable to identify that a breach had occurred until July 2021 when she consulted with her attorneys, who are experienced in identifying these fee practices.

## CLASS ACTION ALLEGATIONS

60.    <u>Definition of the Classes</u>:  Plaintiff brings this action on behalf of herself and all others similarly situated. The Class includes:

> All persons who, within the applicable statute of limitations period, where charged multiple fees for the same transaction in a Zions checking account**.**

13

Plaintiff also brings this action on behalf of the following subclass (the "CB&T Class"):

> All persons in the State of California who, within the applicable statute of limitations period, were charged multiple fees for the same transaction in a California Bank & Trust checking account.

61.    The time period for the Classes is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, until such time as Zions disseminated its new account agreement disclosing the practice for the first time

62.    Excluded from the Classes are Zions and its subsidiaries, affiliates, and any entities in which it has a controlling interest, and each of the officers, directors, immediate family members, legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

63.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a sub-class, if necessary, before this Court determines whether certification is appropriate.

64.    <u>Common Questions of Law and Fact Predominate</u>. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual Class members because Zions has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a)    Whether Zions improperly charged multiple fees on a transaction;

b)    Whether any of the conduct enumerated above violates the parties' contract;

c)    Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing; and

d)    The appropriate measure of damages.

FIRST AMENDED CLASS ACTION COMPLAINT

65.    <u>Numerosity</u>:  The members of the proposed Classes are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to Zions's records. Zions has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

66.    <u>Superiority of Class Action and Risk of Inconsistent or Varying Adjudication</u>. Plaintiff and the members of the Classes suffered, and will continue to suffer, harm as a result of Zions's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. It is impracticable to bring Class members' individual claims before the Court. Individual joinder of all members of the Classes is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Zions as the party opposing the Classes; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impeded their ability to protect their interests.

15

FIRST AMENDED CLASS ACTION COMPLAINT

67.    <u>Typicality</u>. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Zions, as described herein.

68.    <u>Adequacy of Representation</u>. Plaintiff is a more than an adequate representative of the Classes in that Plaintiff has a Zions checking account and has suffered damages as a result of Zions's contract violations, Zions's violations of the covenant of good faith and fair dealing. In addition:

a)    Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b)    There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

c)    Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d)    Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal demands associated with this type of litigation.

69.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

70.    Zions has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

71.    All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CLAIM
### Breach of Contract, including Breach of the Covenant of Good Faith and Fair Dealing (On Behalf of Plaintiff and the Classes)

72.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

FIRST AMENDED CLASS ACTION COMPLAINT

73.     Plaintiff and Zions contracted for checking account services, as embodied in the 2020 Deposit Agreement and Fee Schedule.

74.     Defendant mischaracterized in the 2020 Account Documents its true NSF Fee and OD Fee practices and breached the express terms of the Account Documents.

75.     No contract provision authorizes Defendant to charge more than one fee on the same transaction.

76.     A covenant of good faith and fair dealing is implied in contracts between financial institutions and their members as a matter of state law in nearly every state. Moreover, the UCC mandates good faith and fair dealing in all banking contracts. The covenant of good faith and fair dealing constrains Zions's discretion to exercise self-granted contractual powers.

77.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

78.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

79.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

80.     Defendant has breached its contracts with Plaintiff and the Classes through its NSF and OD Fee policies and practices as alleged herein.

FIRST AMENDED CLASS ACTION COMPLAINT

81.    Zions breached the covenant of good faith and fair dealing through its NSF and OD Fee policies and practices as explained herein.

82.    Plaintiff and members of the putative Classes have performed all of their obligations pursuant to the Bank's agreements.

83.    Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches.

### SECOND CLAIM
### California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of Plaintiff and the CB&T Class)

84.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

85.    Zions's practice of charging more than one NSF or OD Fee on the same item violates California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

86.    Zions's conduct as described herein constitutes a fraudulent business practice within the meaning of Bus. & Prof. Code § 17200, *et seq.*, through its affirmative misrepresentations. Such misrepresentations misled Plaintiff and CB&T Class members and are likely to mislead the public. Specifically, Zions misrepresented material facts, pertaining to the sale and/or furnishing of banking services to the CB&T Class by representing and advertising that it would only assess a single $30 NSF Fee for a single item. Plaintiff relied on these misrepresentations to her detriment. Had she known she would be charged multiple fees on the same item, she would have banked elsewhere or made different payment decisions.

87.    Zions's conduct described herein is "unfair" under Bus. & Prof. Code § 17200 because it is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the CB&T Class, and the public.

FIRST AMENDED CLASS ACTION COMPLAINT

88.     Zions knew or should have known that their representations were false, deceptive, and misleading.

89.     There were reasonably available alternatives to further Zions's legitimate business interests.

90.     Reasonable consumers had no way of knowing that Zions was engaged in false, deceptive, and misleading advertising, and therefore could not have reasonably avoided the injuries that they suffered.

91.     Although Zions has recently updated its contract to disclose the practice, Zions's wrongful conduct is capable of repetition. Indeed, financial institutions change their contracts frequently and, unless enjoined, Zions could choose to mislead accountholders again.

92.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Zions from continuing to engage in the unfair competition described above, or any other act prohibited by law.

93.     Plaintiff also seeks rescission and an order requiring Zions to make full restitution and to disgorge their ill-gotten gains wrongfully obtained from members of the CB&T Class as permitted by Bus. & Prof. Code § 17203. Plaintiff has no adequate remedy at law.

94.     Additionally, Plaintiff and the CB&T Class seek an order requiring Zions to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.     Certifying the proposed Classes, appointing the Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as counsel for the Classes;

B.     Declaring that Zions's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing;

C.     Enjoining Zions from the wrongful conduct as described herein;

D.      Awarding restitution of all fees at issue paid to Zions by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.      Compelling disgorgement of the ill-gotten gains derived by Zions from its misconduct;

F.      Awarding actual and/or compensatory damages in an amount according to proof;

G.      Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I.      Awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demand a jury trial on all claims so triable.

Dated:  February 4, 2022                    **GIBBS LAW GROUP LLP**

                                            By: /s/ David M. Berger
                                                David M. Berger

                                            David M. Berger
                                            Tayler Walters
                                            **GIBBS LAW GROUP LLP**
                                            505 14th Street, Suite 1110
                                            Oakland, California 94612
                                            Tel: (510) 350-9700
                                            dmb@classlawgroup.com
                                            tlw@classlawgroup.com

                                            Jeffrey D. Kaliel
                                            **KALIELGOLD PLLC**
                                            1100 15th Street NW, 4th Floor
                                            Washington, D.C. 20005
                                            Tel: (202) 350-4783
                                            jkaliel@kalielpllc.com

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sophia G. Gold
**KALIELGOLD PLLC**
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783
sgold@kalielgold.com

*Attorneys for Plaintiff and the Proposed Classes*

FIRST AMENDED CLASS ACTION COMPLAINT